**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4995-15T1

MIA M. WERNEGA,

    Plaintiff-Appellant,

v.

EDWARD J. VOLPA,

    Defendant-Respondent.

_____

Submitted May 17, 2017 — Decided June 21, 2017

Before Judges Carroll and Farrington.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-844-94.

Mia M. Wernega, appellant pro se.

Nash Law Firm, LLC, attorneys for respondent (William A. Nash, on the brief).

PER CURIAM

Plaintiff Mia M. Wernega appeals from portions of the Family Part's June 10, 2016 post-judgment matrimonial order. Although the order emancipated the parties' son, it required plaintiff to contribute to the ongoing cost of health insurance premiums that defendant Edward J. Volpa continues to pay for the son's medical

insurance coverage. The order also directed plaintiff to reimburse defendant $1175.22 for child support that defendant overpaid prior to the effective date of the son's emancipation. For the reasons that follow, we affirm in part and reverse in part.

The parties were married in 1989 and have two children, a daughter, born in 1991, and a son, born in 1993. An amended dual final judgment of divorce was entered on October 18, 1994, which incorporated the parties' Property Settlement Agreement (PSA). Pertinent to this appeal, the PSA provided that the parties would have joint legal custody of the children, and designated plaintiff as the primary residential custodial parent. Defendant agreed to pay plaintiff $575 per week in child support until the children's emancipation, as defined in the PSA. Defendant also agreed to continue to provide his existing medical insurance coverage for the children, with the parties equally sharing the cost of all uninsured medical expenses.

Various disputes between the parties thereafter resulted in a series of post-judgment orders. By consent order entered on March 2, 2001, defendant's child support obligation for the two children was modified to $500 per week. Plaintiff was required to pay the first $250 per year per child for all unreimbursed medical expenses pursuant to the New Jersey Child Support

Guidelines[1] (Guidelines). Thereafter, defendant was required to pay eighty percent of such expenses and plaintiff the remaining twenty percent. A June 24, 2005 order left these provisions essentially unchanged.

In 2011, defendant moved to be designated parent of primary residence of the parties' daughter, who was then living with him, and to adjust child support based on her residency change. On February 10, 2012, the court entered an order granting defendant's motion and reducing his child support obligation to $177 per week. Notably, the Guidelines worksheets attached to the order included a $70 cost under the line item "[c]hild's share of health insurance premium."

In 2014, defendant moved to be designated parent of primary residence of the parties' son, to adjust child support accordingly, and to compel plaintiff to contribute toward the children's health insurance premiums and college expenses. On October 17, 2014, the court designated defendant parent of primary residence, set plaintiff's child support obligation at $50 per week for both children pursuant to the Guidelines, and ordered plaintiff to pay her share of the children's health insurance premiums and college expenses. The order further provided that the parties' daughter

---

[1] R. 5:6A.

would be deemed emancipated effective January 1, 2015, at which time plaintiff's child support obligation for the parties' son would adjust to $40 per week.

In the motion under review, filed on April 14, 2016, plaintiff sought the emancipation of the parties' son and consequential termination of her child support obligation. Plaintiff certified that her son was twenty-three years old and scheduled to graduate from college on May 12, 2016. She also contended her son moved out of her home in 2014, and in October 2015 he ceased all communication with her. Defendant opposed the motion, and cross-moved to enforce litigant's rights. In his supporting certification, defendant stated he intended to provide health insurance for his son until the son either turned age twenty-six[2] or found employment that provided health insurance coverage. Defendant thus sought to compel plaintiff to reimburse him twenty

---

[2] We note that federal law bars insurers from preventing willing parents from adding a child under twenty-six — whether dependent or non-dependent — to family coverage. See Patient Protection and Affordable Care Act, P.L. 111-148, § 2714, 124 Stat. 119, 132 (2010) (codified at 42 U.S.C.A. § 300gg-14(a)) (stating that a health insurer offering group or individual coverage that provides support to a dependent child "shall continue to make such coverage available for an adult child (who is not married) until the child turns [twenty-six] years of age"); 45 C.F.R. § 147.120 (2013) (stating that an insurer may require proof of a child-parent relationship, and that the child is under the age of twenty-six, but may not consider the child's financial dependency, residency, student status, or employment status).

percent of the cost of this continued coverage. Defendant further certified that he overpaid plaintiff $1175.22 in child support, and had sent her a proposed consent order to resolve this issue that she refused to sign. Defendant also sought reimbursement for plaintiff's unpaid share of the children's college expenses, unreimbursed medical expenses, and health care coverage.

On June 10, 2016, the trial court entered an order granting plaintiff's motion to emancipate the parties' son as of May 12, 2016, the date of his college graduation, and terminated her child support obligation effective that date. The court granted defendant's cross-motion in part. The order required plaintiff to reimburse defendant twenty percent of the amount that he pays for the son's health care coverage; $1175.22 for his overpayment of child support; and $4415 in unpaid college expenses.

On appeal, plaintiff challenges the requirement that she contribute to the continued cost of her son's medical insurance coverage. She argues that the child's share of health insurance was a component of child support as calculated under the Guidelines, and consequently her obligation to contribute terminated upon her son's emancipation. Plaintiff also argues that the trial court erred in failing to apply the doctrine of laches to bar defendant's claim for overpayment of child support.

Clear standards guide our limited review. "We 'do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 213 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invr's Ins. Co. of Am., 65 N.J. 474, 484 (1974)); accord N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). "Also, '[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding.'" Llewelyn, supra, 440 N.J. Super. at 213 (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Accordingly, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal.'" Id. at 213-14 (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)).

However, we confer no deference upon a trial court's interpretation of the law, which is subject to plenary review. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We may also exercise more extensive review of

trial court findings that do not involve a testimonial hearing or the opportunity to assess witness credibility. Cf. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (stating that deference to Family Court conclusions is not required where "no hearing takes place, no evidence is admitted, and no findings of fact are made"). Nevertheless, "[r]eversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Llewelyn, supra, 440 N.J. Super. at 214 (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

The application of emancipation is a legal concept, imposed when "the fundamental dependent relationship between parent and child" ends. Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006). "It is not automatic and 'need not occur at any particular age[.]'" Llewelyn, supra, 440 N.J. Super. at 216 (quoting Newburgh v. Arrigo, 88 N.J. 529, 543 (1982)). "When the circumstances surrounding the parent-child relationship support a finding the child is emancipated, 'the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support.'" Ibid. (quoting Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997)).

A-4995-15T1

In the present case, there is no challenge to the trial court's decision emancipating the parties' son. The issue, then, is whether a party has a legal duty to bear a share of a child's medical insurance premium following his or her emancipation. While no doubt commendable, we find no such legal duty compels an unwilling parent, such as plaintiff, to do so here.[3] Rather, as we recently reaffirmed, "the court's authority to impose support obligations is circumscribed; it terminates with a child's emancipation." Ricci v. Ricci, 448 N.J. Super. 546, 571 (App. Div. 2017). Accordingly, we reverse that portion of the June 10, 2016 order that requires plaintiff to reimburse defendant twenty percent of the amount defendant pays for the son's health insurance coverage.

Plaintiff next argues that defendant's claim for reimbursement of child support that he overpaid prior to the son's emancipation is barred by the doctrine of laches. We find this

---

[3] We recognize that a court, upon application of a parent or child, may convert (on the basis of exceptional circumstances, including but not limited to a mental or physical disability) a child support obligation to another form of financial maintenance for a child who has reached age twenty-three. N.J.S.A. 2A:17-56.67e. Our decision is not intended to preclude either defendant or the parties' son from seeking to convert plaintiff's child support obligation to a contribution toward health insurance premiums upon a showing of "exceptional circumstances," which we are unable to conclude exist based on the present record.

argument lacks sufficient merit to warrant extended discussion. <u>R.</u> 2:11-3(e)(1)(E). We add only the following.

"Laches is an equitable doctrine, operating as an affirmative defense that precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." <u>Fox v. Millman</u>, 210 <u>N.J.</u> 401, 417 (2012) (quoting <u>Cty. of Morris v. Fauver</u>, 153 <u>N.J.</u> 80, 105 (1998)). "Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." <u>Knorr v. Smeal</u>, 178 <u>N.J.</u> 169, 181 (2003). "The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" <u>Ibid.</u> (quoting <u>Lavin v. Bd. of Educ.</u>, 90 <u>N.J.</u> 145, 152 (1982)). "[W]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." <u>Mancini v. Twp. of Teaneck</u>, 179 <u>N.J.</u> 425, 436 (2004) (internal citation omitted).

The doctrine of laches is applicable to divorce proceedings. <u>Schlemm v. Schlemm</u>, 31 <u>N.J.</u> 557, 572 (1960). However, laches "cannot validly be used to sponsor an inequitable result." <u>Linek</u>

v. Korbeil, 333 N.J. Super. 464, 475 (App. Div.), certif. denied, 165 N.J. 676 (2000).

Guided by these principles, we discern no abuse of discretion in the trial court's failure to apply laches to bar defendant's claim for overpayment. The record reflects that defendant sought to resolve this issue amicably, first by contacting the Probation Department, and then by way of a proposed consent order that plaintiff chose not to sign. Any delay by defendant in seeking this relief in his cross-motion is thus explainable and excusable, and plaintiff lacks any reasonable basis to believe defendant abandoned this claim.

Affirmed in part and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4995-15T1