**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1911-23

BERENICE RUA,

    Plaintiff-Appellant,

v.

LUIS RUA,

    Defendant-Respondent.

_____

Submitted April 30, 2025 – Decided May 19, 2025

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0904-12.

Jardim, Meisner, Salmon, Sprague & Susser, PC, attorneys for appellant (Jessica Ragno Sprague, on the briefs).

Luis Rua, appellant pro se.

PER CURIAM

In this post-judgment matrimonial action, plaintiff Berenice Rua appeals from September 1, 2023, October 6, 2023 and February 21, 2024 Family Part orders; specifically, the provisions of the orders granting defendant Luis Rua's motion to establish a child support obligation for the parties' oldest son D.R. (Darren),[1] retroactive to July 24, 2022, and amending defendant's child support obligation for the parties' other two children, J.R. (John) and G.R. (Georgia), retroactive to April 29, 2022; and denying plaintiff's cross-motions to declare Darren emancipated, enforce the division of defendant's military pension, enforce prior orders, and for attorneys' fees.

On appeal, plaintiff argues the trial court erred by: 1) failing to deem Darren emancipated and establishing a child support obligation for Darren; 2) retroactively granting child support for Darren and retroactively amending child support for John and Georgia; 3) failing to enforce the division of defendant's military pension; 4) failing to enforce previous court orders; and 5) failing to grant plaintiff attorneys' fees and costs. We affirm in part and reverse in part.

---

[1] We use initials and pseudonyms to protect the privacy of the children. R. 1:38-3(f)(6).

I.

The parties were married in 2003 and were granted a divorce from bed and board in 2012 and a judgment of divorce in 2015, which incorporated the parties' marital settlement agreement (MSA). In June 2022, all three children resided with plaintiff in New Jersey and defendant resided in Florida.

We first discuss the series of orders on the parties' competing motions regarding emancipation, child support, enforcement of prior orders and attorneys' fees.

On consent of the parties, a May 31, 2022 order granted defendant's requests to relocate Darren to Florida and transfer legal and physical custody of Darren to defendant upon his relocation. After his graduation from high school in June 2022, Darren moved in with defendant on July 24, 2022. As a result, defendant's child support obligation for Darren was terminated as of the relocation date. Darren did not immediately commence higher education, instead he worked full-time.

The May 31, 2022 order further required the parties to attend mediation to address issues of child support, pension benefit distribution and parenting time.

A-1911-23

The parties did not reach an agreement and again filed competing motions. The resulting September 1, 2023 order denied without prejudice defendant's request for child support on behalf of Darren and plaintiff's requests to deem Darren emancipated and for recalculation of child support for John and Georgia. The court also denied plaintiff's requests to require defendant to become current on his child support arrears, pending the determination of whether Darren was emancipated. The court further ordered defendant to provide proof of Darren's full-time enrollment in trade school within seven days of the order.

Upon the court's receipt of proof of Darren's enrollment in trade school, the October 6, 2023 supplemental order denied plaintiff's request to deem Darren emancipated and granted defendant's request for child support for Darren, effective July 24, 2022 until April 13, 2023. The court also granted the parties' joint request to modify defendant's child support obligation for John and Georgia, which it recalculated effective April 29, 2022. The court denied plaintiff's request to require defendant to immediately become current on his child support arrears, instead setting a weekly arrears payback amount.

On the parties' subsequent motions, the February 21, 2024 order denied plaintiff's request to vacate her child support obligation for Darren and granted in part her request to require defendant to submit complete GI Bill information

4

from Darren's school. The court ordered defendant to provide plaintiff the complete financial assistance Darren was receiving through the GI Bill or the United States Department of Veterans Affairs (the VA) within twenty-one days of the order.

As to the parties' issues regarding the distribution of their pensions, the September 1, 2023 order and October 6, 2023 supplemental order denied in part plaintiff's request to find defendant in violation of litigant's rights for failing to comply with the MSA and denied without prejudice her requests for enforcement of the division of defendant's military pension and to establish her share of defendant's pension as non-modifiable alimony. The court found defendant was not in violation of litigant's rights and instead ordered the parties to cooperate with an evaluation of their respective pensions and effectuate the division of their retirement assets pursuant to their MSA within forty-five days of the order.

The February 21, 2024 order granted plaintiff's requests to find defendant in violation of litigant's rights for failing to comply with the evaluation of his pension and denied her requests to require defendant to pay her share of his pension as non-modifiable alimony, for reimbursement of costs she paid for defendant's pension evaluation, and to set arrears for defendant's failure to provide plaintiff her share of his pension.

5

With regard to plaintiff's attempts to enforce prior orders, the September 1, 2023 order and October 6, 2023 supplemental order granted in part plaintiff's request to require defendant to immediately pay a $4,340 outstanding attorneys' fee award and instead reduced the amount to a judgment and ordered defendant to pay it within thirty days of the order. The February 21, 2024 order denied plaintiff's request to find defendant in violation of litigant's rights for failure to pay the outstanding attorneys' fee award.

With regard to plaintiff's application for attorneys' fees, all three orders denied her requests.

## II.

The scope of our review of Family Part orders is narrow. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters," Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413), and we will not overturn the Family Part's findings of fact when they are "supported by adequate, substantial, credible evidence," Cesare, 154 N.J. at 412. A reviewing court will also not disturb the Family Part's factual findings and legal conclusions that flow from them unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably

credible evidence as to offend the interests of justice."  Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)).  We review a Family Part's legal determinations de novo. Id. at 565.

With respect to the MSA, "a question regarding the interpretation or construction of a contract is a legal one and our review is plenary, with no special deference to the trial judge's interpretation of the law and the legal consequences that flow from the established facts." Barr v. Barr, 418 N.J. Super. 18, 31 (App. Div. 2011).

We first address plaintiff's contentions regarding Darren's emancipation, the establishment of plaintiff's child support obligation for Darren and the amendment of defendant's child support obligation for John and Georgia.

The "determination of emancipation is a legal issue, imposed when the fundamental dependent relationship between parent and child ends." Ricci, 448 N.J. Super. at 571.  A child's reaching the age of majority of eighteen is prima facie proof of emancipation, but it is not determinative.  Llewelyn v. Shewchuk, 440 N.J. Super. 207, 216 (App. Div. 2015).  Once the age of majority is established, "the burden of proof to rebut the statutory presumption of emancipation shifts to the party or child seeking to continue the support

obligation." Ibid. "The presumption . . . may be overcome by evidence that a dependent relationship with the parents continues because of the needs of the child." Ibid.

"[A] parent can bind himself or herself by consensual agreement, voluntarily and knowingly negotiated, to support a child past majority, and such agreement is enforceable if fair and equitable." Dolce v. Dolce, 383 N.J. Super. 11, 18 (App. Div. 2006). Settlement agreements in matrimonial matters, being "'essentially consensual and voluntary in character, . . . [are] entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just." Id. at 20 (alteration in original) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). "And while incorporation of a[n M]SA into a divorce decree does not render it immutable, nor its terms solely governed by contract law, nevertheless, if found to be fair and just, it is specifically enforceable in equity." Ibid.

When interpreting the terms of a contract, the court's objective is to "discern and implement the intentions of the parties." Quinn v. Quinn, 225 N.J. 34, 45 (2016). When the intent of the parties is clear, "[i]t is not the function of the court to rewrite or revise an agreement." Ibid. (citing Pacifico, 190 N.J. at 266). Generally, courts "will not . . . make a better agreement than the parties

themselves made."  Holtham v. Lucas, 460 N.J. Super. 308, 320 (App. Div. 2019).

When determining the intent of the parties, courts "read the document as a whole in a fair and common sense manner."  Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009).  If the terms of a contract are clear and unambiguous, courts should "enforce the agreement as written, unless doing so would lead to an absurd result."  Quinn, 225 N.J. at 45.

The parties' MSA provides:

> 3.11  Emancipation:  The children shall be deemed, for the purpose of this Agreement to have become emancipated, upon the earliest happening of any of the following events:
>
> (1) The children attaining the age of eighteen, except that if the children are still in high school or intend on enrolling in a full time course of study at a post-secondary education institution, including but not limited to college or trade school, at the time of the child's eighteenth birthday, emancipation shall then occur upon completion of the program.  Attendance must be full time and continuous and shall not exceed a five (5) year program or age twenty-three (23).

Because Darren turned eighteen while still in high school, he would be deemed emancipated under the MSA when he graduated high school unless he intended to enroll in a full-time course of study at that time.  The parties' motions provided competing certifications on this issue.

9

Plaintiff certified that when Darren moved to Florida in July 2022, he did not enroll in college, trade school or any other higher education, and instead was working full-time. She said that when Darren visited her for Christmas in 2022, he had to return to Florida for work. She further stated Darren contacted her in June 2023 and told her "he was contemplating going to trade school."

Defendant certified Darren was unable to enroll in trade school in 2022 because, by the time he became a Florida resident, there were no available spots in the program. He further stated Darren enrolled in county college in 2022, "where he attended an orientation, received his school student ID, official school email, met with the advisors, and . . . toured the school during an in-person orientation and program overview."

We are persuaded the parties' competing certifications necessitated a plenary hearing to determine Darren's intent at the time he graduated high school. "The critical evaluation required for emancipation determinations typically necessitates a plenary hearing, especially 'when the submissions show there is a genuine and substantial factual dispute[,]' which the trial court must resolve." Ricci, 448 N.J. Super. at 574 (alteration in original) (quoting Shewchuk, 440 N.J. Super. at 217).

Noting the MSA "only require[d] the parties' children intend on enrolling in a full-time course of study at a post-secondary educational institution," the court found Darren's enrollment in trade school starting August 28, 2023[2] deemed him unemancipated under the MSA. We are persuaded this finding was an error because the MSA provided for Darren's emancipation upon his graduation from high school unless he intended to enroll in trade school at that time. The court mistakenly resolved the factual dispute by accepting Darren's enrollment in trade school fourteen months after his high school graduation as proof of his intent to attend higher education when he graduated. We therefore reverse the portions of the orders denying plaintiff's request to deem Darren emancipated and remand for a plenary hearing.

Because plaintiff's child support obligation for Darren resulted from his remaining unemancipated, we reverse the portions of the orders establishing plaintiff's child support obligation for Darren, pending the outcome of the plenary hearing on his emancipation.

---

[2] Although the October 6, 2023 order stated defendant provided proof of Darren's full-time enrollment from August 28, 2023 to January 4, 2024, that document is not in the record. Plaintiff's appendix contains an August 9, 2023 email confirming Darren's program orientation on August 14, 2023.

We need not reach plaintiff's claim the court erred by failing to consider Darren's receipt of VA benefits in establishing the child support amount and also decline to consider plaintiff's contentions the court incorrectly established the obligation retroactive to July 24, 2022. We leave to the sound discretion of the trial court to determine, after a plenary hearing, whether defendant's substitution of VA benefits for the GI Bill was in compliance with the MSA and should result in an adjustment of plaintiff's child support obligation and the effective date of the obligation, if one is established.

We next address plaintiff's contention regarding the retroactive modification of defendant's child support obligation for John and Georgia. Plaintiff challenges only the April 29, 2022 effective date of the amended child support order, not the amount of child support.

N.J.S.A. 2A:17-56.23a prohibits retroactive modification of child support and child support arrearages. Keegan v. Keegan, 326 N.J. Super. 289, 293 (App. Div. 1999). In pertinent part, the statute provides:

> No payment or installment of an order for child support, or those portions of an order which are allocated for child support established . . . shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.

12

[N.J.S.A. 2A:17-56.23a (emphasis added).]

As reflected in the May 31, 2022 order, defendant sought to amend his child support obligation for John and Georgia in April 2022 and therefore the amended obligation may be retroactive to the date he mailed that motion. However, we are persuaded the amended obligation should have been established retroactive to July 24, 2022, the date Darren no longer resided with plaintiff. We therefore reverse the order modifying defendant's obligation for John and Georgia and remand for the court to enter an amended order establishing this obligation retroactive to July 24, 2022.[3]

We next turn to the division of defendant's military pension, addressing plaintiff's contentions the trial court erred by denying her requests to require defendant to pay her share of his pension as non-dischargeable permanent alimony, for reimbursement of costs she incurred for the evaluation of his pension, and for arrears on the pension commencing March 2022.

The MSA provided "[defendant] has a pension with the military and [plaintiff] has a pension with the State of New Jersey. The parties agree to have

---

[3] If the court establishes a child support obligation for Darren, it should subtract the parties' respective obligations and enter one child support award in accordance with the Child Support Guidelines. Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 15, www.gannlaw.com (2025).

same evaluated by AllPro QDRO to determine the coverture value with the intention of equalizing their pensions at a cost to be equally divided between them."

The MSA also stated:

> In the event that the military will not pay out [plaintiff's] share directly to her, [defendant] consents to same being classified as non-modifiable alimony, which shall be taxable to [plaintiff] and tax deductible to [defendant]. In addition, [defendant] hereby consents to the payment of this amount from any periodic payments he receives (such as wages or retired pay from any source), and this clause may be used to establish his consent, when necessary, for the entry of an order for garnishment, wage assignment or income withholding.

The May 27, 2022 order required the parties to attend mediation on issues including pension benefit distribution. The September 1, 2023 order and October 6, 2023 supplemental order noted both parties' pensions still had to be evaluated and the parties did not mediate this issue as ordered. The court did not find defendant's actions to be willful and unjustified, and therefore did not find him in violation of litigant's rights. The court "require[d] both parties to cooperate with the AllPro QDRO evaluation and effectuate the division of their retirement assets, as per the parties' MSA, within forty-five (45) days of entry of this [o]rder."

14

The February 21, 2024 order noted both parties were ordered to obtain pension evaluations and "[p]laintiff only provided her prior pension evaluation from 2013 rather than obtaining an updated one as ordered by the court." Because both parties failed to comply with the prior orders, the court denied plaintiff's requests for reimbursement of costs and to set arrears.

The court also denied plaintiff's request for defendant to pay her share of his pension as permanent non-dischargeable alimony pursuant to the MSA because she "failed to provide the court with sufficient basis for this request."

We review an order to enforce litigant's rights under Rule 1:10-3 for abuse of discretion. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018). A Family Part judge "possesses broad equitable powers to accomplish substantial justice" and may tailor an appropriate remedy for violation of its orders. Finger v. Zenn, 335 N.J. Super. 438, 446 (App. Div. 2000).

"Rule 1:10-3 provides a 'means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order.'" N. Jersey Media Grp. Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17-18 (2015)). "Once the court

15

determines the non-compliant party was able to comply with [an] order [or judgment] and unable to show the failure was excusable, it may impose appropriate sanctions." Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012). "[T]he court has discretion and flexibility in fashioning an appropriate remedy to compel compliance." Lipsky v. N.J. Ass'n of Health Plans, Inc., 474 N.J. Super. 447, 463 (App. Div. 2023) (citing In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. at 17-18).

Here, the parties entered into the MSA in August 2012. Defendant admits he did not have his pension evaluated until November 23, 2023—over eleven years later. Defendant was first found to have been in violation of the MSA in June 2015, when he was ordered to "work together [with plaintiff] to effectuate the distribution of the parties' retirement assets and comply within thirty (30) days." However, plaintiff also failed to comply with the October 6, 2023 order because she did not obtain an updated Qualified Domestic Relations Order (QDRO).

"Under [the doctrine of unclean hands], '[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings.'" Dobco, Inc. v. Bergen Cnty. Improvement Auth., 250 N.J. 396, 400 (2022) (second alteration in original) (quoting Am. Dream at

16

Marlboro, L.L.C. v. Plan. Bd. of Marlboro, 209 N.J. 161, 170 (2012)).  "[A] court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit."  Faustin v. Lewis, 85 N.J. 507, 511 (1981).

Because plaintiff did not abide by the court's October 6, 2023 order to obtain a new QDRO evaluation and instead submitted her 2013 evaluation, the trial court did not abuse its discretion by denying her relief.  The evaluation was necessary to effectuate the terms of the MSA, which required the parties to equalize the value of their respective pensions.

We also discern no abuse of discretion in the court's denial of plaintiff's request to establish her share of defendant's pension payments as non-modifiable alimony.  The MSA provided that alternative only if "the military will not pay out [plaintiff]'s share directly to her."  The court denied this request because plaintiff failed to provide a sufficient basis for it, and plaintiff does not explain why the court's finding was in error.

We next turn to plaintiff's argument the court erred in denying her request to find defendant in violation of litigant's rights based on his failure to pay outstanding attorneys' fees and costs totaling $4,340.

The September 1, 2023 order and October 6, 2023 supplemental order reduced the $4,340 award to a judgment against defendant, with interest, and

A-1911-23

ordered reimbursement within thirty days of the order. The February 21, 2024 order denied plaintiff's motion to enforce litigant's rights. It is unclear what relief plaintiff sought in filing the subsequent motion to enforce. The amount due was already reduced to judgment, which plaintiff may enforce pursuant to Rule 4:59-1 by obtaining a writ of execution and levying defendant's bank accounts or garnishing his wages. Therefore, we discern no abuse of discretion in the court's denial of the motion.

Lastly, we address the court's denial of plaintiff's request for attorneys' fees. While all three orders on appeal outlined the factors a court must consider in determining whether to award attorneys' fees under Rule 5:3-5(c), the orders contained no discussion of these factors in denying plaintiff's request. In addition, the MSA provided for an attorneys' fee award to a party prevailing on an enforcement action, but the court did not consider whether plaintiff was entitled to attorneys' fees under this provision. See Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (holding a trial court's failure to give effect to an attorneys' fee provision in an MSA constitutes an abuse of discretion). We are therefore constrained to reverse the orders denying plaintiff's requests for attorneys' fees and remand for further proceedings.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1911-23